S93A0825. CRAVEN v. LOWNDES COUNTY HOSPITAL
AUTHORITY et al.
(437 SE2d 308)

CLARKE, Chief Justice.

In August 1986, when he was 15 years old, appellant (Craven) had a mole on his back examined. Appellee (Santos) performed a biopsy and diagnosed it as noncancerous. From August 1986, until September 1991, Craven experienced no pain or other symptoms of cancer. In September 1991, however, a physician advised Craven that the growth on his back was cancerous. Subsequent investigations showed

that the biopsy done in 1986 revealed a malignant melanoma which was misdiagnosed as benign.

Craven filed this medical malpractice complaint on September 3, 1992, naming Dr. Santos and Lowndes County Hospital Authority as defendants. The trial court granted summary judgment to the defendants concluding that the claim was barred by OCGA § 9-3-71 (b), the medical malpractice statute of repose. Craven appealed on two grounds: first, that OCGA § 9-3-71 (b) denies him equal protection of the law; second, that defendants are estopped from relying on the statute because their misrepresentation to him hid the injury until the claim was time barred.

1. The statute in question does two things. It imposes a statute of limitation and superimposes on that a statute of repose. As originally enacted, the act of the legislature simply provided for a statute of limitation for malpractice actions and read as follows:

> Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which the negligent or wrongful act or omission occurred. OCGA § 9-3-71.

In 1985, the legislature amended the statute by dividing it into four subsections. Subsection (a) of the amended statute is similar to the above language and reads as follows:

> (a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred. OCGA § 9-3-71 (a).

Subsections (b), (c) and (d) were added to the statute and read as follows:

> (b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.
> (c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.
> (d) Nothing contained in subsection (a) or (b) of this Code section shall be construed to repeal Code Section 9-3-73, which shall be deemed to apply either to the applicable statutes of limitation or repose. OCGA § 9-3-71 (b)-(d).

Relying on *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983), and *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984), appellant contends that OCGA § 9-3-71 (b) creates an arbitrary classification of plaintiffs in medical malpractice cases. The first classification is those victims of medical malpractice who discover bodily harm within five years of the date of the negligent act or omission. The second classification includes those persons who discover their injuries more than five years after the date of the negligent act or omission. The statute allows the first group to bring an action against the defendant. The second group has no cause of action because the statute says it is abrogated and is in a state of ultimate repose. Appellant argues these classifications are "arbitrary and not based on some difference having a fair and substantial relation to the object of the legislation." He concedes that the legislature has the power to establish statutes of repose, but he contends that the legislature may not impose a time-triggered abrogation of a cause of action to some groups of claimants but not for others. The parties agree the plaintiff is not a member of a suspect class and is not entitled to strict scrutiny. Therefore, we apply the rational basis test.

Under this test, the court will uphold the statute if, under any conceivable set of facts, the classification bears a rational relationship to a legitimate end of government not prohibited by the Constitution. *Allrid v. Emory University*, 249 Ga. 35 (285 SE2d 521) (1982). Those challenging the statute bear the responsibility to "convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U. S. 93, 111 (99 SC 939, 59 LE2d 171) (1979).

In *Clark v. Singer*, supra, we identified the interest behind OCGA § 9-3-71 as eliminating stale claims. Indeed, that justification still applies to the statute of limitation, but the amended version of OCGA § 9-3-71 is directed toward other interests as well. Because of the nature of the practice of medicine, uncertainty over the causes of illness and injury makes it difficult for insurers to adequately assess premiums based on known risks. Furthermore, the passage of time makes it more difficult to determine the cause of injury, particularly in diseases where medical science cannot pinpoint the exact cause. Therefore, we conclude that the purpose of the statute of repose is rational. Our decisions in both *Clark v. Singer*, supra, and *Shessel v. Stroup*, supra, support this finding.

2. *Clark* and *Shessel* invalidated the pre-1985 statute of limitation because the statute barred the cause of action before it accrued. *Shessel* found no "substantial relation in this . . . classification to the object of a limitation statute." 253 Ga. at 59. This case deals with a different situation. The pre-1985 statute was a statute of limitation.

As such, its clear purpose is to eliminate stale claims. A special concurrence noted that although a statute of limitation should not bar a claim before it accrued, a statute of repose could abolish a claim before its accrual. *Shessel*, 253 Ga. at 60 (Clarke, J., concurring specially). The distinction between the statute of limitation and the statute of repose is clear.

> A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable.

*Hill v. Fordham*, 186 Ga. App. 354, 357 (367 SE2d 128) (1988). This amounts to a recognition that the legislature may conclude that the time may arrive when past transgressions are no longer actionable. The long history of such conclusions emphasizes their rationality. From the biblical time of the Year of Jubilee to the present day, policymakers have exercised the right to "wipe the slate clean" after a fixed period of time. In doing this, there is the clear distinction between a statute of limitation "barring" an action, and a statute of repose providing for the abolition of a cause of action after the passage of the time provided. We cannot say that the legislature acted irrationally when it amended the statute in question.

3. Appellant also contends that the trial court erroneously granted summary judgment for defendant on the issue of whether its representations should estop the assertion of the statute of repose as a defense. Fraud on the part of a defendant will toll a statute of repose. *Hill v. Fordham*, supra at 358.

To make out a claim of equitable estoppel, the plaintiff must show fraud by offering evidence of a known failure to reveal negligence. *Hendrix v. Schrecengost*, 183 Ga. App. 201, 202 (358 SE2d 486) (1987). Nothing in this record shows that appellees had any knowledge of negligent practice. "A mere misdiagnosis 'is insufficient to raise an issue of fraud.' " Id. at 203.

*Judgment affirmed. All the Justices concur, except Benham, Sears-Collins and Hunstein, JJ., who dissent.*

BENHAM, Justice, dissenting.

Because I am persuaded that OCGA § 9-3-71 (b) denies equal protection of the law to those victims of medical malpractice whose injuries do not manifest before five years after the act of malpractice, I must dissent to the affirmance of the grant of summary judgment to appellees. Since the rights involved in this case are too substantial to be considered under the extremely relaxed "rational basis" test, I of-

fer in this opinion an intermediate level of scrutiny which I believe this court should apply in equal protection cases involving such rights.

1. The first step in an equal protection analysis must necessarily be the selection of the appropriate standard to apply. Georgia has typically employed a two-tiered analysis, applying strict scrutiny to cases involving fundamental rights or suspect classifications, and applying a "rational relation" test to all other cases. See *Fortson v. Weeks*, 232 Ga. 472, 488 (208 SE2d 68) (1974), Justice Hall's special concurrence. The parties to this case agree that appellant is not a member of a suspect class and is not, on that basis, entitled to strict scrutiny of the classifications established by the statute. Appellees assert that the appropriate standard to apply if strict scrutiny is not called for is the "rational relation" standard. However, I suggest there is a third choice and propose that we adopt an intermediate standard of review which may be called the "substantial relation" test.

In *Ponder v. Fulton-DeKalb Hosp. Auth.*, 256 Ga. 833, 835 (353 SE2d 515) (1987), this court included the intermediate standard in a discussion of which standard to apply in a consideration of an equal protection challenge to the charitable immunity doctrine. The standard was briefly described there as requiring that a classification be substantially related to an important governmental objective. A clear and persuasive articulation of the standard may be found in *Carson v. Maurer*, 120 NH 925 (424 A2d 825) (1980). In that case, the New Hampshire Supreme Court considered an equal protection challenge to a statute concerning medical malpractice actions and concluded that the rational relation, or rational basis test was not adequate to a proper treatment of the issue.

> Although the right to recover for personal injuries is not a "fundamental right," . . . it is nevertheless an important substantive right. . . . [T]he rights involved herein are sufficiently important to require that the restrictions imposed on those rights be subjected to a more rigorous judicial scrutiny than allowed under the rational basis test. Consequently, . . . classifications [creating such restrictions] "must be reasonable, not arbitrary, *and* must rest upon some ground of difference having a fair and substantial relation to the object of the legislation" in order to satisfy State equal protection guarantees.

Id. at 424 A2d 830-831. Recognizing that the U. S. Supreme Court had chosen to restrict the substantial relation test to cases involving distinctions based on illegitimacy and gender, New Hampshire's Supreme Court chose to use the more rigorous standard as a matter of

state constitutional law, not federal constitutional law, noting that it was not confined to federal constitutional standards and was free to grant individuals more rights than the U. S. Constitution requires. This court has also recognized its power to grant broader rights under the Georgia Constitution than are granted by the U. S. Constitution. *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992), fn. 1 and cases cited therein.

The language used by the New Hampshire Supreme Court in *Carson*, "fair and substantial relation to the object of the legislation," has sometimes been used by this court when applying the "rational basis" test. See, e.g., *Smith v. Cobb County-Kennestone Hosp. Auth.*, 262 Ga. 566 (423 SE2d 235) (1992); *Mansfield v. Pannell*, 261 Ga. 243 (404 SE2d 104) (1991); *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983); *Allrid v. Emory Univ.*, 249 Ga. 35 (285 SE2d 521) (1982); *Bickford v. Nolen*, 240 Ga. 255 (240 SE2d 24) (1977). In other cases, this court has used the more traditional formulation, that a classification does not deny equal protection if it bears a rational relation to the purpose of the legislation. See, e.g., *Henry v. State*, 263 Ga. 417, 418 (434 SE2d 469) (1993); *Nix v. Long Mountain Resources*, 262 Ga. 506 (422 SE2d 195) (1992). That statement of the rational relation test is similar to that pronounced in *Cannon v. Ga. Farm Bureau Mut. Ins. Co.*, 240 Ga. 479, 482 (241 SE2d 238) (1978), to be the standard under the Georgia Constitution:

> Under the equal protection guarantee of our State Constitution [cit.], classification in legislation is permitted when the classification is based on rational distinctions, and the basis of the classification bears a direct and real relation to the object or purpose of the legislation. [Cits.]

For the sake of clarity, I would adopt the following standards to be applied to equal protection challenges under the Georgia Constitution. Ordinarily, classifications will be upheld if they are based on rational distinctions and the basis of the classification bears a direct and real relation to the object of the legislation. Id. When a classification infringes on substantive rights, it will be upheld only if it is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation. *Perini v. State*, 245 Ga. 160 (264 SE2d 172) (1980). When fundamental rights or suspect classifications are involved, a challenged enactment will be upheld only if the classification is necessarily related to a compelling governmental objective. *Henry*, supra.

The right infringed upon in the present case is the right of some medical malpractice plaintiffs to resort to the courts to recover damages. The right to recover for such damages is provided by statute.

OCGA § 51-1-9. Such rights are termed substantive rights. *Polito v. Holland*, 258 Ga. 54 (365 SE2d 273) (1988). This case, therefore, involves an infringement of substantive rights, calling for application of the substantial relation standard. In other words, the statute in question, which creates two classes of medical malpractice plaintiffs, one of which may pursue recovery of damages and the other of which cannot, should not be upheld unless the classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation.

2. Having established the standard I believe should be used, I turn now to the objective or purpose of the legislation at issue.

> In *Clark v. Singer*, supra, we identified the interest behind OCGA § 9-3-71 as eliminating stale claims. Indeed, that justification still applies to the statute of limitation, but the amended version of OCGA § 9-3-71 is directed toward other interests as well. Because of the nature of the practice of medicine, uncertainty over the causes of illness and injury makes it difficult for insurers to . . . assess premiums based on known risks. Furthermore, the passage of time makes it more difficult to determine the cause of injury, particularly in diseases where medical science cannot pinpoint the exact cause.

Majority at p. 658. Thus, in addition to the elimination of stale claims, a statute of repose seeks to eliminate what is sometimes called the "long tail" problem, a long period of potential liability. It is asserted that reduction of that problem is necessary to keep health care affordable and accessible to the public. I recognize, therefore, that elimination of stale claims and reduction of the "long tail" of liability, the purposes of the statute being challenged by appellants, are legitimate state objectives. The question now is whether the legislature's classification of medical malpractice plaintiffs is reasonable, not arbitrary and bears a fair and substantial relation to those objectives.

In the abstract, I have no hesitation in declaring that a statute of repose is an appropriate response to the "long tail" problem. However, based on evidence in the record of this case that many injuries, exemplified by those suffered by appellant, may take more than five years after an act of medical malpractice to manifest, I cannot conclude that the classification created by OCGA § 9-3-71 (b) is reasonable, not arbitrary, and bears a fair and substantial relation to the objective of minimizing the "long tail" problem. The record does not support a conclusion that five years is the point at which elimination of many meritorious claims will significantly improve the problem of long-term liability. That being so, I must conclude that the choice of

five years is arbitrary. While the elimination of those claims which accrue after five years would certainly reduce liability, and thereby have a substantial relation to the object of the legislation, I cannot agree that the relation of that classification to the purpose of the legislation is fair in its impact on those whose injuries manifest after five years. I reach this conclusion reluctantly, recognizing the enormous challenge the legislature faces in attempting to balance the rights of claimants against the needs of society. Nonetheless, I am compelled to find that the five-year statute of repose in OCGA § 9-3-71 (b) denies equal protection of the law to those whose right of action is abrogated before it accrues. Accordingly, I would reverse the grant of summary judgment to appellees.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED DECEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993.

*Bennett, Wisenbaker, Bennett & Williams, Michael S. Bennett, Williams & Henry, Philip C. Henry, Davis, Gregory & Christy, Hardy Gregory, Jr.,* for appellant.
*Tillman, McTier, Coleman, Talley, Newbern & Kurrie, Wade H. Coleman, Alexander & Vann, William U. Norwood III,* for appellees.