S92A0640. SMITH et al. v. COBB COUNTY-KENNESTONE
HOSPITAL AUTHORITY.
(423 SE2d 235)

BELL, Presiding Justice.

Appellants-plaintiffs, as next friends of their daughter, Krista A. Smith, contend that the statute of limitation for medical malpractice actions by minors, OCGA § 9-3-73 (b), is unconstitutional as applied to her. We find no merit in their arguments, and affirm the judgment in favor of defendants-appellees.

A brief description of the facts of this case and the history of § 9-3-73 (b) is necessary in order to lay the foundation for our discussion of appellants' constitutional arguments. Krista Smith was born on July 1, 1981, and allegedly suffered brain damage during her birth. Under the versions of OCGA §§ 9-3-71, 9-3-73, and 9-3-90 in effect at the date of her birth, Krista Smith suffered from a disability due to her minority, and, had those statutes remained unchanged, she would have enjoyed the benefit of having the statute of limitation, § 9-3-71, tolled until her eighteenth birthday. At the time of her birth, § 9-3-71 set forth the pertinent statute of limitation, requiring that "[e]xcept as otherwise provided in this article [OCGA Title 9, Ch. 3, Art. 4], an action for medical malpractice [had to] be brought within two years after the date on which the negligent or wrongful act or omission occurred." However, in conjunction with then §§ 9-3-73;[1] 9-3-71 mandated that the statute of limitation would be tolled if the injured party suffered from a disability prescribed in OCGA Title 9, Ch. 3, Art. 5. One of the Code sections in Article 5, OCGA § 9-3-90 (a) (as amended in 1984 respecting "persons imprisoned," Ga. L. 1984, p. 580), provides that

> *minors* and persons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time

---

[1] Section 9-3-73 then stated that "[t]he disabilities and exceptions prescribed in Article 5 of this chapter in limiting actions on contracts shall be allowed and held applicable to actions, whether in tort or contract, for medical malpractice."

after their disability is removed to bring an action as is prescribed for other persons. [Emphasis supplied.]

Section 9-3-71 was amended in 1985, in part, to provide that

[e]xcept as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which *an injury or death arising from* a negligent or wrongful act or omission occurred [emphasis supplied],

but this change did not affect Krista Smith, as the alleged malpractice of which she complains and the alleged injuries arising therefrom occurred on the same date.

A 1987 amendment to § 9-3-73 and a subsequent construction of that statute by this Court did affect Krista Smith, as under that construction she had until July 1, 1989, for a suit to be brought on her behalf. On July 1, 1987, an amendment to § 9-3-73 became effective which significantly restricted the period of disability that would toll the operation of § 9-3-71. Pursuant to that amendment, § 9-3-73 now provides that:

(a) Except as provided in this Code section, the disabilities and exceptions prescribed in Article 5 of this chapter in limiting actions on contracts shall be allowed and held applicable to actions, whether in tort or contract, for alleged malpractice.

(b) Notwithstanding Article 5 of this chapter, . . . *all minors who have attained the age of five years* shall be subject to the periods of limitation for actions for medical malpractice provided in this article. A minor who has not attained the age of five years shall have two years from the date of such minor's fifth birthday within which to bring a medical malpractice action if the cause of action arose before such minor attained the age of five years.

. . .

(g) No action which, prior to July 1, 1987, has been barred by provisions relating to limitations of actions shall be revived by this article, as amended. No action which would be barred before July 1, 1987, by the provisions of this article, as amended, but which would not be so barred by the provisions of this article and Article 5 of this chapter in force immediately prior to July 1, 1987, shall be barred until July 1, 1989. [Emphasis supplied.]

Krista Smith attained the age of five years on July 1, 1986, and, under the literal wording of subsections (b) and (g), would only have had until July 1, 1988, for suit to have been filed on her behalf. However, in *Mansfield v. Pannell*, 261 Ga. 243, 245 (404 SE2d 104) (1991), we "construe[d] subsection (b) and (g) as meaning that no action will be barred before two years from the effective date. The result of that construction is that no action will be barred before July 1, 1989." Thus, Krista Smith had until the latter date for her suit to be filed.

Even so, appellants did not file suit against appellees-defendants until June 26, 1991.[2] Appellees moved for summary judgment on the ground that the suit was barred by the statute of limitation, and appellants opposed the motions on the ground that § 9-3-73 (b) is unconstitutional. The trial court found the statute constitutional, and entered summary judgment for appellees. The present appeal followed.

1. Appellants contend that § 9-3-73 (b),[3] as applied to Krista Smith,[4] denies her equal protection under the Fourteenth Amendment of the United States Constitution and the 1983 Georgia Constitution, Art. I, Sec. I, Par. II,[5] because treating Krista Smith "as though she were an adult has no fair and substantial relation to the object of the legislation." Appellants contend that the "statute treats minors with medical malpractice injuries differently than minors with other injuries for no useful reason," and "unconstitutionally draw[s] a distinction between children with injuries arising from medical malpractice and those that have other actionable injuries." Appellees' response is twofold. First, they argue that in *Mansfield v. Pannell*, supra, 261 Ga., this Court has already decided the equal protection question raised by appellants. Second, they assert that, even if *Mansfield* did not determine the equal protection question, appellants' equal protection argument has no merit. Appellants reply that *Mansfield* did not decide the equal protection issue.

---

[2] It does not appear that any explanation for the failure to meet the July 1, 1989, deadline has been offered.

[3] Appellants' brief also questions, in various arguments, the constitutionality of the medical malpractice statute of repose, OCGA § 9-3-73 (c). However, the applicability of subsection (c) is not at issue in this case, as appellants filed Krista Smith's claim within the period it requires. Accordingly, we will not address appellants' arguments concerning subsection (c).

[4] Appellants contend that the statute is also unconstitutional "in general." Assuming that appellants are asserting a facial challenge or challenges to the statute, we decline to address their contentions in that regard, as appellants lack standing to raise them. See *Tempo Management v. DeKalb County*, 258 Ga. 713 (1) (373 SE2d 622) (1988); *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987).

[5] Article I, Section I, Paragraph II provides that "[p]rotection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws."

For the following reasons, we find that *Mansfield* does not control the equal protection issue raised in this case, but we further find that appellants' equal protection argument has no merit.

(a) Although our opinion in *Mansfield* has language that can be read as implying that the equal protection argument raised by appellants here was addressed and decided in that case, in fact this Court's holding was limited to a different equal protection issue. In *Mansfield* the exact question was whether "children born between July 1, 1980 and before July 1, 1982, are denied the two-year cushion [the grace periods of § 9-3-73 (b) and (g)] and are denied equal protection," *Mansfield*, supra, 261 Ga. at 243. We concluded that the "scheme [t]here is not rational," id. at 244, and then judicially construed the statute to remedy the defect and thereby render the statute "constitutional, rational, and consistent with the intent of the legislature," id. at 245. Having construed the statute so that "no action [would] be barred before July 1, 1989," we announced that "[t]hus construed, the statute is constitutional." Id.

Appellees contend that by holding that "[t]hus construed, the statute is constitutional," we implicitly evaluated and determined the equal protection claim raised by appellants in this case, but our response is that our holding in *Mansfield* was limited solely to the equal protection question expressly addressed in that opinion, and in no way was intended to signal that we had reached and determined the equal protection question raised by appellants in this case.[6] See generally *Clark v. Singer*, 250 Ga. 470, 471 (298 SE2d 484) (1983).[7]

(b) We find that appellants' equal protection argument has no merit. Appellants concede that the

standard of review in this case is the "rational basis" test. This standard requires that classifications created by a state "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." [Cits.] [*Allrid v. Emory*

---

[6] We note that in *Mansfield* we had no reason to reach the equal protection issue that is raised in the present case. In that case the child on whose behalf suit was brought was born on August 20, 1980. The plaintiffs filed their suit "more than eight years after the birth of the child," 261 Ga. 243, but presumably before July 1, 1989. Thus, our holding meant that the plaintiffs in *Mansfield* had filed their suit before it was barred by the statute of limitation.

[7] In *Clark* the plaintiff contended that then § 9-3-71 as applied to wrongful death actions unconstitutionally denied equal protection and due process. The defendants argued that this Court had upheld the statute against constitutional challenges in *Allrid v. Emory Univ.*, 249 Ga. 35 (285 SE2d 521) (1982). We found that we had done so in *Allrid*, "but not against the challenges made here. . . . *Allrid* did not deal with the equal protection argument raised here." *Clark*, supra, 250 Ga. at 471.

*Univ.*, 249 Ga. 35, 38 (1c) (285 SE2d 521) (1982).]

" 'If the legislative purpose is legitimate and the classification drawn has some reasonable relation to furthering that purpose, the classification passes muster.' " *Doran v. Travelers Indem. Co.*, 254 Ga. 63, 69 (326 SE2d 221) (1985), quoting from *Wilder v. State*, 232 Ga. 404, 405 (207 SE2d 38) (1974).

> Laws enacted by our legislature are presumed to be constitutional and the burden is on the party challenging the law to prove its invalidity. [Cit.] When classifications are challenged under the equal protection guarantees they will be upheld if there is any set of facts upon which they could be sustained. [Cit.] [*Dept. of Transp. v. Ga. Mining Assn.*, 252 Ga. 128, 129-130 (1) (311 SE2d 443) (1984).]

As part of its amendment of § 9-3-73, the General Assembly provided us with specific objectives that it hoped to accomplish by amending the statute, and also with its own finding that there is a rational basis between the statute and its stated objectives:

> (f) The findings of the General Assembly under this Code section include, without limitation, that a reasonable relationship exists between the provisions, goals, and classifications of this Code section and the rational, legitimate state objectives of providing quality health care, assuring the availability of physicians, preventing the curtailment of medical services, stabilizing insurance and medical costs, preventing stale medical malpractice claims, and providing for the public safety, health, and welfare as a whole. [OCGA § 9-3-73 (f).]

It is not disputed that the objectives recited in subsection (f) are legitimate goals, but there is a dispute whether a substantial relationship exists between the classification made by § 9-3-73 (b) and the objectives of the legislation. We acknowledge the General Assembly's finding that a rational basis exists, but we must reach our own determination, independent of that finding, of whether the classification in question can be sustained.

We have no difficulty concluding that the separate classification of minors for purposes of medical malpractice actions could accomplish the stated legislative objectives. Before the 1987 amendment of § 9-3-73, minors such as Krista Smith (whose cause of action accrued at birth) could wait up to 18 years before the medical malpractice statute of limitation began to run. It appears from subsection (f) of § 9-3-73 that the General Assembly may have perceived the onset of a

crisis in this state's health care industry, and that a method of meeting the crisis was to reduce minors' period of disability from eighteen to five years, thereby limiting the period within which minors could bring medical malpractice claims. The reduction of the period within which minors could bring suit certainly would tend to achieve the stated legislative objectives, as, e.g., it would tend to prevent stale medical malpractice claims, and would also tend to lower insurance and medical costs by decreasing the period in which health care providers and their insurers would be exposed to suit.

Moreover, appellants have not carried their burden to demonstrate that the separate classification of minors under § 9-3-73 (b) is irrational or arbitrary as applied to Krista Smith. Cf. *Clark v. Singer*, supra, 250 Ga. (holding that then § 9-3-71, as applied to wrongful death actions, arbitrarily distinguished between wrongful death claimants by barring some actions before they accrued). We conclude that there is a rational relationship between the stated objectives of § 9-3-73 and the classification of minors it establishes. We therefore hold that § 9-3-73 (b) does not violate Krista Smith's equal protection rights by virtue of having reduced the period within which she was required to file her medical malpractice action.

2. Appellants contend that § 9-3-73 (b) denies Krista Smith the rights, privileges, and immunities guaranteed by the 1983 Ga. Const., Art. I, Sec. I, Par. VII,[8] in that the statute denies her the right to delay bringing suit until she reaches her majority. In a related contention, they allege that the statute denies her procedural due process under the Fourteenth Amendment and the 1983 Ga. Const., Art. I, Sec. I, Par. I,[9] in that she "has never had her opportunity to pursue her claim at a meaningful time and in a meaningful manner."

We interpret both of these arguments as amounting to a contention that Krista Smith has been denied access to the courts, a contention which we find has no merit. First, Krista Smith's right to bring suit was adequately safeguarded during her minority by the rule that a next friend could (as was eventually done by her parents) bring an action on her behalf. OCGA § 9-11-17 (c) ("if an infant . . . does not have a duly appointed representative, he may bring an action by his next friend . . ."). Second, under this Court's construction of § 9-3-73 in *Mansfield*, supra, 261 Ga., appellants had *eight years* to file an action as next friends of Krista Smith. Finally, this Court has already

---

[8] Article 1, Section 1, Paragraph 7 provides that
[a]ll citizens of the United States, resident in this state, are hereby declared citizens of this state; and it shall be the duty of the General Assembly to enact such laws as will protect them in the full enjoyment of the rights, privileges, and immunities due to such citizenship.
[9] Article 1, Section 1, Paragraph 1 provides that "[n]o person shall be deprived of life, liberty, or property except by due process of law."

held that statutes of limitation are not unconstitutional because they bar access to the courts:

> Statutes of limitation, by their very nature, bar access to the courts after the prescribed period of time has elapsed. "Statutes of limitation . . . in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." [Cit.] [*Allrid*, supra, 249 Ga. at 39 (1d).]

3. Appellants assert that the retroactive application of § 9-3-73 (b) unconstitutionally defeats a vested substantive right. They argue that Krista Smith's right to sue was vested when she was born, but that the statute deprives her of that right "arbitrarily and retroactively." They further argue that this Court's opinion in *Browning v. Maytag Corp.*, 261 Ga. 20 (401 SE2d 725) (1991), controls this question in their favor.

We are not persuaded by appellants' arguments, as a

> "statute of limitation is remedial in nature. The legislature can constitutionally provide for the retrospective application of a remedial statute provided a time be fixed subsequent to the passage of the statute which allows citizens affected by it a reasonable time to protect their rights." [Cit.] [*Allrid*, supra, 249 Ga. at 37 (1b).]

In this case the statute was applied to Krista Smith in such a manner that she effectively received a grace period of six years (the eight years between the accrual of her cause of action and July 1, 1989, less the two years of the medical malpractice statute of limitation). This six-year grace period was a reasonable time for her rights to be protected. See *Allrid*, id.

*Browning v. Maytag* is not authority to the contrary. In that case this Court held that a *statute of repose* could not be applied retroactively to bar a cause of action that had already accrued before the statute of repose took effect. *Browning*, supra, 261 Ga. at 21-22. Here, the question is whether a statute of *limitation* may bar an action for a right which has already accrued.[10] This question is controlled by *Al-*

---

[10] In *Hill v. Fordham*, 186 Ga. App. 354, 357 (2) (367 SE2d 128) (1988), the Court of

*lrid,* supra, 249 Ga. at 37 (1b), and *Browning* is inapposite.

4. For the foregoing reasons, we find that appellants' arguments state no meritorious reason for holding that § 9-3-73 (b) is unconstitutional as applied to Krista Smith. We therefore affirm the judgment of the trial court.

*Judgment affirmed. All the Justices concur; Hunstein, J., not participating.*

DECIDED DECEMBER 1, 1992.

*Freeman & Hawkins, Paul M. Hawkins, Lawrence J. Myers, William G. Scoggin,* for appellants.

*Alston & Bird, Kenneth B. Pollock, Robert D. McCallum, Jr., Judson Graves, Downey, Cleveland, Parker, Williams & Davis, Y. Kevin Williams, Houston D. Smith III, Barnes, Browning, Tanksley & Casurella, Benny C. Priest,* for appellee.

---

Appeals observed that

> [t]here is a distinction between a statute of limitation and a statute of ultimate repose. A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. [Cit.]